# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| ACOUSTIC TECHNOLOGY, INC., | § | |
| | § | |
| v. | § | Case No. 2:16-CV-00831-JRG-RSP |
| | § | |
| SILVER SPRING NETWORKS, INC., | § | |

## MEMORANDUM OPINION AND ORDER

Acoustic Technology, Inc. ("ATI") accuses Silver Spring Networks, Inc. ("Silver Spring") of infringing United States Patent Nos. 5,986,574 and 6,509,841, both of which generally relate to automated technology for reading utility meters. *See* Am. Compl. ¶¶ 13-20, ECF No. 49. Silver Spring moves to change venue to the United States District Court for the Northern District of California under 28 U.S.C. § 1404(a). Def.'s Venue Mot., ECF No. 32. For the following reasons, Silver Spring's motion is **GRANTED**.

## BACKGROUND

ATI is a Massachusetts corporation headquartered in East Boston, Massachusetts. Bassiouni Decl. ¶ 3, February 2, 2017, ECF No. 48-1. ATI does not have employees or a place of business in Texas, other than a registered agent for service of process in Dallas, Texas. *See* Collins Decl. ¶ 8, Sept. 29, 2016, ECF No. 32-2. ATI does, however, market, sell, and maintain emergency notification warning systems in Texas and within the Eastern District of Texas. Bassiouni Decl. ¶¶ 5-6. As a result, ATI has generated sales and paid Texas franchise taxes. *Id.* ¶ 8. ATI does not do business in California. *Id.* ¶ 10.

Silver Spring is a Delaware corporation that has been headquartered in Northern California since 2003, first in Redwood City, California and more recently in San Jose, California. Dresselhuys Decl. ¶ 3, Nov. 3, 2016, ECF No. 32-1. Members of Silver Spring's leadership team

1

and employees with technical knowledge of Silver Spring's products live and work in Northern California, with the exception of one Vice President who lives and works from his home in Fairhope, Alabama. *Id.* ¶¶ 4-12. Silver Spring maintains product records and unreleased prototypes at its headquarters in San Jose. *Id.* ¶ 14. Aside from one Silver Spring field employee who works one day per week from his home in Lewisville, Texas, Silver Spring does not have any employees, documents, assets, or offices in the district. *Id.* ¶ 17. Silver Spring's only physical presence in Texas is a facility in San Antonio and the 37 employees that work there. Def.'s Interrog. Resp. 6, ECF No. 48-11.

## DISCUSSION

A district court can transfer a case to another district where the case might have been brought for "the convenience of parties and witnesses" and "in the interests of justice." 28 U.S.C. § 1404(a). Transfer of a case serves the interests of justice if the party seeking a change of venue shows the transferee district to be "clearly more convenient" than the transferor district. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). Public and private interest factors guide the analysis. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private factors include:

(1) ease of access to evidence ("sources of proof");
(2) subpoena power over potential witnesses;
(3) cost of attendance for willing witnesses; and
(4) other practical problems.

*Volkswagen II*, 545 F.3d at 315. The public factors include:

(1) administrative difficulties flowing from court congestion;
(2) local interest in having localized interests decided at home;
(3) the familiarity of the forum with the law that will govern the case; and
(4) the avoidance of unnecessary problems of conflict of laws.

*Volkswagen I*, 371 F.3d at 203. To meet the burden of showing that the Northern District of California is clearly more convenient, Silver Spring must show that these private and public interest factors on balance weigh in favor of transfer. *See id.*

Before assessing the relevant factors, the threshold question is whether the case could have been brought in the transferee district. *Volkswagen II*, 545 F.3d at 312. "Any civil action for patent infringement may be brought in the judicial district where the defendant resides." 28 U.S.C. § 1400(b); *see also* 28 U.S.C. §§ 1391(b)-(c) (venue is proper where defendants reside, and a corporate defendant is "deemed to reside in any judicial district in which it is subject to personal jurisdiction"). Because Silver Spring is headquartered in the Northern District of California, ATI's patent infringement action could have been brought there. ATI does not contend otherwise.

Turning to the relevant factors, Silver Spring contends that "[v]irtually all of Silver Spring's documentary evidence that is potentially relevant to this litigation is located at Silver Spring's corporate headquarters in San Jose, California." Def.'s Venue Mot. 8, ECF No. 32. Such evidence includes (1) documents related to the design and development of Silver Spring products, (2) physical prototypes, and (3) documents related to the sales, licensing, and marketing of Silver Spring products. *Id.* (citing Dresselhuys Decl. ¶ 14, ECF No. 32-1). In addition, Silver Spring highlights that all of its potential (non-expert) witnesses live and work in Northern California. *Id.*

The Court agrees that Silver Spring's evidence and witnesses support transfer. Relevant evidence in patent cases often comes from the accused infringer. *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Thus, the place where the defendant's documents are kept weighs in favor of transfer to that location. *Id.* Aside from Silver Spring's documents, Silver Spring witnesses are all located in Northern California, and access to those witnesses will be more convenient from the transferee district.

ATI downplays the significance of Silver Spring's physical evidence. ATI argues, for example, that Silver Spring can just as conveniently access its documents from Texas as it can from California, and that Silver Spring's document production has thus far not been hampered, despite the fact that the case has been pending in this district. ATI Resp. Br. 8-9, ECF No. 48. ATI's arguments are based in part on one of Silver Spring's Interrogatory answers, in which Silver Spring stated that "from a purely technical standpoint, Silver Spring's electronically stored data can be accessed by Silver Spring employees with appropriate credentials using a Virtual Private Network over the internet, from either San Antonio, San Jose, or San Francisco." Def.'s Interrog. Resp. 7-8, ECF No. 48-11.

While ATI's arguments are not illogical, precedent largely forecloses them. Aside from Silver Spring's potential prototype exhibits, the physical location of documents should perhaps not significantly affect the Court's transfer analysis in the modern technological age. *See, e.g.*, *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 778 (E.D. Tex. 2000). This rationale has nevertheless been rejected by both the Fifth and Federal Circuits. "That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render [the sources of proof] factor superfluous." *Volkswagen II*, 545 F.3d at 316. Similarly, the Federal Circuit has suggested that—notwithstanding where or how documents are produced during discovery—the expense of transporting documents to trial is one that cannot be ignored. *See In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009) ("Keeping this case in the Eastern District of Texas will impose a significant and unnecessary burden on the petitioners to transport documents that would not be incurred if the case were to proceed in the Northern District of California.").

ATI similarly downplays the significance of Silver Spring's witnesses. According to ATI, Silver Spring's corporate representative admitted during deposition that members of Silver Spring's leadership team would not likely testify at trial. ATI Resp. Br. 9-10, ECF No. 48 (citing Dresselhuys Dep. 59:23-63:5). While a district court should assess the "relevance and materiality of the information the witness may provide," however, it is not necessary for a party "to show that the potential witness has more than relevant and material information." *In re Genentech*, 566 F.3d at 1343. Silver Spring's leadership and technical employees undoubtedly have relevant and material information. Even if all members of Silver Spring's team do not testify at trial, the transferee district will at least be more convenient for those that do testify.

ATI adds little to counterbalance the locus of Silver Spring's evidence and witnesses. ATI contends that Silver Spring's San Antonio employees have knowledge of the accused system, and thus this district would be more convenient for those employees. ATI Resp. Br. 10-11, ECF No. 48. Testimony from Silver Spring's Executive Vice President, Mr. Dresselhuys, however, rebuts this contention. Mr. Dresselhuys testified at the hearing that Silver Spring's San Antonio office is simply a satellite office. The San Antonio office maintains only payroll and expense related documents, the office is not involved with the development or deployment of the accused automatic meter reading technology, and there are no physical documents or evidence related to the accused technology in the San Antonio office.

ATI highlights that Silver Spring executed a contract in 2016 to install a system that allegedly uses the accused technology in several counties in the Eastern District of Texas. ATI Resp. Br. 3-4, ECF No. 48 (citing Dresselhuys Dep. 70:2-9, 78:14-17; 80:23-81:15). According to ATI, "[t]he progress of the [ ] contract will accordingly be a key issue in this case." *Id.* at 11. ATI's argument, however, is not supported by the record. As Silver Spring points out, the contract has

not secured regulatory approval yet, and even if the contract is approved, Silver Spring's technology would not be deployed in or near this district until both asserted patents have expired. *See* Dresselhuys Decl. 76:8-25; 87:4-17, Jan. 25, 2017, ECF No. 50-2; *see also Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 876-77 (E.D. Tex. 2013) (Transfer motions "are to be decided based on the situation which existed when suit was instituted.").

The relative convenience of and subpoena power over non-party witnesses does not meaningfully affect the considerations supporting transfer. Although the parties dispute the significance of non-party witnesses and whether such witnesses will be necessary, Silver Spring suggests that if its utility customers' deployment of the accused technology becomes an issue, one of its largest utility customers is located in Northern California. Dresselhuys Decl. ¶ 16, ECF No. 32-1. Trial for such non-party witnesses would therefore be more convenient in the Northern District of California. Subpoena power over these witnesses could also be a consideration. *See* Fed. R. Civ. P. 45(a)(2), 45(c)(1).

For its part, ATI highlights a non-party inventor of one of the asserted patents who lives in Philadelphia, Pennsylvania, and other inventors who are believed to live near Philadelphia. *See* ATI Resp. Br. 12-13. Although there is no evidence of the relative inconvenience these non-party inventors would face if forced to attend trial in the Northern District of California, the Court at least credits ATI with the existence of these potential non-party witnesses and their location under the Fifth Circuit's "100-mile" rule. *See Volkswagen I*, 371 F.3d at 204-05 ("When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."). The non-party inventors, however, are not enough to shift the balance in favor of keeping the case in this district.

The public interest factors do not significantly affect the balance of factors supporting transfer. ATI contends that local interest weighs against transfer because Silver Spring has signed a contract to deploy products within several counties in the district. ATI Resp. Br. 14-15, ECF No. 48. Even if the presence of Silver Spring products would give rise to local interest in a patent case in this district, however, the contract that will potentially implicate the district has not yet been approved much less resulted in the deployment of any products or services in the district. *See* Dresselhuys Decl. 76:8-25; 87:4-17, ECF No. 50-2. The local interest in Northern California is less contingent, to the extent it exists. *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009); *see also TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008) (local interest in patent actions generally a fiction). Finally, ATI suggests that "comparative court congestion weighs against transfer," ATI Resp. Br. 14-15, ECF No. 48, but there is little evidence to support this argument.

## CONCLUSION

In light of the foregoing, the Court concludes that Silver Spring has shown the Northern District of California to be the clearly more convenient venue. Accordingly, Silver Springs' motion to change venue, ECF No. 32, is **GRANTED**. At the conclusion of twenty days from the entry of this Order, the clerk shall **TRANSFER** the case to the United States District Court for the Northern District of California. In light of the pending transfer, the docket control order is **VACATED**.

**SIGNED this 25th day of March, 2017.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE